**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| DEBORAH REYNOLDS-DIOT, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:03-CV-0245-M |
| | § | |
| GROUP 1 SOFTWARE, INC., | § | |
| and ANDREW W. NADEN, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION & ORDER

Having considered the arguments raised by the parties with respect to Plaintiffs' Joint Motion

for Reconsideration, the Court hereby VACATES its Order and Partial Judgment dated December

7, 2004, and substitutes the following Opinion of the Court. FED. R. CIV. P. 54(b); *see also, Calpetco*

*1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1414 (5th Cir. 1993) ("Because a partial summary

judgment is interlocutory in nature, the district court retains the discretion to revise it; and we review

only for abuse of that discretion.").

For the reasons stated below, the Court GRANTS Defendants' Motions for Summary

Judgment as to Plaintiffs' retaliation claims under Title VII of the Civil Rights Act of 1964 and state

law. The Court also GRANTS summary judgment as to Plaintiffs' intentional infliction of emotional

distress claims, and Plaintiff Newman's assault claim. Defendants' Motions are DENIED as to

Plaintiffs' sexual harassment claims under Title VII of the Civil Rights Act of 1964, Plaintiffs'

sexual harassment claims under the Texas Commission on Human Rights Act, and the assault claims

asserted by Plaintiffs Rose and Wujek.

1

BACKGROUND

Plaintiffs Deborah Reynolds-Diot ("Diot"), Cindy Newman, Sally Rose and Marianne Wujek are former employees of Group 1 Software, Inc. ("Group 1").  They allege that between the fall of 2000 and October of 2001 they were sexually harassed by Defendant Andrew W. Naden ("Naden"). Naden was a consultant to Group 1 until May of 2001, when he was hired as Executive Vice President of Sales for the Enterprise Solutions Division of Group 1.  Plaintiffs recount several incidents in which they were subjected by Naden to unwanted physical contact, propositions for sexual contact and/or other abusive and crude language.  On one occasion, Naden is alleged to have "french kissed" Ms. Rose, without her permission.  On another, he allegedly attempted to grope her. Plaintiffs describe frequent comments of a sexually explicit nature by Naden.

Plaintiffs reported some of Naden's objectionable conduct to Group 1's management in October of 2001.  Plaintiffs agree that Naden's conduct of touching, propositioning and using sexual terminology directed toward Plaintiffs ceased after the October, 2001 reports were made.  Plaintiffs contend, however, that Naden and Group 1 immediately retaliated against them for complaining about Naden's conduct.[1]  Rose claims Naden and Group 1 tampered with her sales assignments, which led to a decline in her commissions.  Diot claims that Naden refused her repeated transfer requests and gave her meaningless assignments.  All four of the Plaintiffs allege that Naden made disparaging remarks about them to their colleagues, both with respect to their personal lives and their professional performance.  In early 2002, Diot, Newman and Rose resigned from Group 1.  They

---

[1]At oral argument, Plaintiffs' counsel argued that the Plaintiffs were harassed by Defendants after the October report, although the harassment was not based on their sex.  He seemed to suggest that this created a cause of action other than retaliation.  The Court knows of no legal theory of "harassment", other than retaliation, on which the alleged conduct becomes actionable under Title VII or its state law equivalents.

claim the Defendants' retaliatory conduct constituted a constructive discharge.  Ms. Wujek was

terminated by Group 1 on May 17, 2002, seven months after her October report was made.  Wujek

believes that her termination was in retaliation for her report of Naden's conduct.

Plaintiffs have brought claims under Title VII of the Civil Rights Act of 1964, Tex. Lab.

Code § 21.001, et seq. (Vernon 1996), and Md. Code Art. 49B §§ 14-18 (2001).  Plaintiffs also

assert claims for intentional infliction of emotional distress and assault.[2]

ANALYSIS

A.      *Plaintiffs' Title VII and State Law Discrimination Claims*

The cornerstone of Plaintiffs' complaint is that Naden sexually harassed them in violation

of  Title VII of the Civil Rights Act of 1964.  42 U.S.C. § 2000e (2004).  Plaintiffs contend that

Naden and Group 1 created a "hostile work environment" for them and then retaliated when they

reported it.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998).  Since Title VII does not

permit a plaintiff to recover directly from a supervisor or fellow employee, the sexual harassment

and retaliation claims lie solely against Group 1.  *See* 42 U.S.C. § 2000e(b) (definition of

"employer"); *Grant v. Lone Star Co.*, 21 F.3d 649 (5th Cir. 1994).

i.      *Hostile Work Environment*

A plaintiff who alleges she was subjected to a hostile work environment must prove that: (1)

she belongs to a protected group, (2) she has been subject to unwelcome sexual harassment, (3) the

harassment complained of was based upon sex, and (4) the harassment complained of affected a

term, condition or privilege of her employment.  *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir.

---

[2]At the August 23, 2004 hearing, the Court orally granted Defendants' Motion for Summary Judgment on Plaintiffs' negligence and defamation claims.

1999); *see also Frank v. Xerox Corp.*, 347 F.3d 130 (5th Cir. 2003) (applying the same factors to a race discrimination case under Title VII). Sexual harassment is actionable under Title VII if it is "sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment." *Watts*, 170 F.3d at 509; *see also La Day v. Catalyst Tech., Inc.*, 302 F.3d 474 (5th Cir. 2002).

By Order dated December 7, 2004, the Court granted summary judgment as to Plaintiffs' hostile work environment claims, finding Group 1 had satisfied the affirmative defense to liability created by the Supreme Court's *Faragher* and *Ellerth* cases. *See Faragher,* 524 U.S. at 778; *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). Pursuant to these cases, a defendant is relieved of liability for a hostile work environment if it proves: (1) it exercised reasonable care to prevent and promptly correct any sexually harassing behavior, and (2) the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities provided by the employer, or otherwise unreasonably failed to avoid harm. *Faragher,* 524 U.S. at 778. On further reflection, the Court concludes it did not fully consider an argument raised in Plaintiffs' Response to Defendants' Motion for Summary Judgment, that the affirmative defense is unavailable when the alleged harasser is "sufficiently high. . . in the management hierarchy so as to speak for the corporate employer." *See Ackel v. Nat'l Communications, Inc.*, 339 F.3d 376, 384 (5th Cir. 2003).

Most of the events at issue in this case occurred while Naden was employed as Executive Vice President of Sales for the Enterprise Solutions Division of Group 1. In their Response to the Motions for Summary Judgment, Plaintiffs produced evidence: (1) Naden reported directly to Group 1's CEO; (2) Naden's department was the "life blood of the company"; (3) Naden had substantial influence over the assignments and commissions allocated to his subordinates; and (4) Naden

repeatedly purported to have the authority to direct the Group 1 Human Resources Department to terminate Group 1 employees. The Court finds Plaintiffs have produced sufficient evidence to create a fact question as to whether Naden was "indisputably within that class of an employer organization's officials" who may be treated as the proxy of the corporation. *See id.* at 383-84 (noting that the Supreme Court has suggested "that an owner, supervisor holding a sufficiently high position in the management hierarchy, proprietor, partner, or corporate officer" may be treated as a corporation's proxy). If Naden is a proxy for Group 1, then the *Ellerth/Faragher* defense will be unavailable to Group 1. Therefore, Group 1 is not entitled to summary judgment on that basis.

The Court further finds that Plaintiffs have satisfied their burden of producing evidence they were subjected to a hostile work environment while employed at Group 1. Plaintiffs belong to a protected group, and they have produced evidence they were subjected to unwelcome sexual harassment by Naden, which was based upon their gender. In evaluating whether the alleged harassment affected a term, condition or privilege of their employment, the Court considers "all of the relevant circumstances, including the frequency of the conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with the employee's work performance." *See Faragher*, 524 U.S. at 787-88. Plaintiffs have produced evidence showing a pattern of sexually explicit comments and sexual propositions by Naden, many of which were humiliating, which Naden directed toward each of the four Plaintiffs between May of 2001 and October of 2001. The Court finds this evidence sufficient to create a question of fact as to whether Naden's alleged actions were the kind of "extreme conduct" that would prevent Plaintiffs from succeeding in the workplace. *See Shepherd v. Comptroller of Public Accounts of State of Texas*, 168 F.3d 871, 874 (5th Cir. 1999). Accordingly, Defendants' Motions

for Summary Judgment are DENIED with respect to Plaintiffs' hostile work environment claims.

ii.     *Retaliation*

A Title VII retaliation claim is evaluated under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674 (5th Cir. 2001). First, the Plaintiffs must present a prima facie case. This entails producing evidence that they engaged in an activity protected by Title VII, that the employer took an "adverse employment action" against the employee following the protected activity, and that there is a causal link between the protected activity and the adverse employment action. *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 705 (5th Cir. 1997), *cert. denied*, 522 U.S. 932 (1997). If the Plaintiffs demonstrate a prima facie case, the burden then shifts to the Defendants to provide a legitimate, non-retaliatory explanation for the adverse employment action. Finally, if the Defendants present such an explanation, the burden shifts back to the Plaintiffs to raise a fact issue as to whether the Defendants' explanation is a mere pretext for discrimination. *See id.; Evans v. City of Houston*, 246 F.3d 344, 351 (5th Cir. 2001).

Plaintiff Wujek was terminated in May 2002, and she suspects her termination was related to her report of sexual harassment in October 2001. Wujek's retaliation claim relies principally on the seven-month proximity between the report and her termination, and evidence that soon after her report, she began hearing rumors she would soon be "out the door". The Court is of the opinion Wujek's evidence does not show a causal link between her termination and her report of sexual harassment, however, for the purposes of Defendants' Motion for Summary Judgment, the Court will presume that Wujek's factual allegations are sufficient to satisfy her burden of making out a prima facie case. In response, Defendants have provided a legitimate non-retaliatory explanation for her

6

termination.  Group 1 has submitted the declaration of Mr. Bebee, the supervisor responsible for

Wujek's termination, in which Bebee states that the reasons for her termination were purely

economic.  He states that he instructed Ms. Wujek's supervisor to offer to rehire her in another

position, and that she turned the opportunity down.  Importantly, Bebee also affirms that when he

terminated Wujek he had no knowledge of her accusations involving Mr. Naden.

Wujek has not submitted any evidence that Defendants' explanation is a pretext for

discrimination.  Wujek's contention that her termination was in retaliation for her report is based on

suppositions and conclusions, rather than on admissible facts.  Wujek cannot rely on the temporal

proximity between her report of Naden's conduct and her termination to demonstrate a "causal link"

between these two events.  *See Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir.1993).  Because

Defendants have presented an unrebutted non-retaliatory explanation for her termination, by the

person who terminated her, and who had no knowledge of her sexual harassment complaint,

Defendants' Motion for Summary Judgment is granted with respect to Wujek's retaliation claim.

The three remaining Plaintiffs resigned from Group 1 voluntarily.  The issue as to their

claims is not the causation element of the prima facie case, but rather whether any adverse

employment action occurred.  The adverse employment action must be an ultimate employment

decision, including an act such as "hiring, granting leave, discharging, promoting and

compensating."  *Mattern*, 104 F.3d 702, 707, quoting *Dollis v. Rubin*, 77 F.3d 777, 782 (5th Cir.

1995).  Plaintiffs Diot, Rose and Newman address this issue by asserting that Naden interfered with

their quotas, transfers and commissions, disparaged them to their coworkers, and otherwise meddled

with their job performance.  None of the Plaintiffs provided any evidence of a tangible cost to them

of any of these alleged actions.  A supervisor's hostility and oral threats do not constitute an ultimate

employment decision. *See Mattern*, 104 F.3d at 702. Since Plaintiffs have not quantified their injuries, they are asking the Court to find that an ultimate employment decision occurred based solely on general allegations of lost compensation, negative remarks, and the poor working relationship that developed between them and Group 1 after the Plaintiffs reported Naden's conduct. This evidence is insufficient to establish an ultimate employment decision, which Plaintiffs must prove to make out a prima facie case. *See generally Union Planters Nat. Leasing v. Woods*, 687 F.2d 117, 119 (5th Cir. 1982). ("The party opposed to the motion [for summary judgment] is required to bring forward significant probative evidence demonstrating the existence of a triable issue of fact.")

In the alternative to proving that an adverse employment action resulted from Naden's interference with their compensation and assignments, Plaintiffs Diot, Rose and Newman also allege that Group 1's and Naden's behavior after they reported Naden's alleged conduct constitutes a constructive discharge, which is equivalent to a termination, and thus is an ultimate employment decision. A constructive discharge occurs when an employer imposes conditions so difficult or unpleasant that "a reasonable person in the employee's shoes would have felt compelled to resign." *Landgraf v. USI Film Products*, 968 F.2d 427, 429 (5th Cir. 1992). A claim that a constructive discharge occurred must be based on harassment more severe or pervasive than that required to prove a hostile work environment. *Id.* at 430. Plaintiffs Diot, Rose and Newman do not satisfy the high burden of proving they were constructively discharged. They each acknowledge that Naden's alleged sexual harassment of them ceased as of October, 2001. The claimed sexual harassment cannot, therefore, justify their decision to resign several months later. Instead, their constructive discharge claim must rely on evidence of Naden's and Group 1's post-reporting actions. The allegations of Defendants' conduct after October, 2001 did not create conditions so difficult or

unpleasant that a reasonable person in the position of Ms. Diot, Ms. Rose or Ms. Newman would have felt compelled to resign.

iii.      *State Law Sexual Harassment Claims*

The parties agree that Plaintiffs' claims under the Texas Commission on Human Rights Act are governed by the same standards as their Title VII claims. *See Pineda v. United Parcel Service, Inc.*, 360 F.3d 483 (5th Cir. 2004). Since the Court denies Defendants' Motion for Summary Judgment with respect to the Title VII hostile work environment claims, it also DENIES summary judgment on the Texas state law hostile work environment claims brought by Plaintiffs Diot, Newman and Rose. However, the Court GRANTS summary judgment insofar as Diot, Newman and Rose assert state law retaliation claims.

The Court also GRANTS summary judgment, in favor of Defendants, as to Plaintiff Wujek's claims under the Maryland Fair Employment Practice Act. This statute, though referenced as a cause of action in the Plaintiffs' Complaint, does not create a private right of action. *See Jordan v. CSX Intermodal, Inc.*, 991 F. Supp. 754, 756, n. 1 (D. Md. 1998); *Dillon v. The Great Atlantic & Pacific Tea Co., Inc.*, 43 Md. App. 161, 403 A.2d 406 (1979). The Court holds that Plaintiff Wujek has failed to plead a claim for sexual harassment under Maryland state law.

B.      *Intentional Infliction of Emotional Distress*

Under both Texas and Maryland law, a claim for intentional infliction of emotional distress ("IIED") has four elements. The plaintiff must prove: (1) the employer acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the employer's actions caused the plaintiff emotional distress; and (4) the emotional distress that the plaintiff suffered was severe. *See Southwestern Bell Mobile Systems, Inc. v. Franco*, 971 S.W.2d 52 (Tex. 1998); *Borchers v.*

9

*Hrychuk*, 126 Md. App. 10, 727 A.2d 388 (1999). Ordinary workplace disputes are not sufficiently severe to support relief under this legal theory. In Texas, only the "most unusual of circumstances" gives rise to a claim for intentional infliction of emotional distress. *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 613 (Tex. 1999) (evidence that supervisor physically threatened employees, repeatedly charged at them, and publicly humiliated them supports a claim of IIED); *see also Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 308 (5th Cir. 1989) (proof that employer intentionally framed an innocent employee as a thief will support liability for IIED). Likewise, IIED claims in Maryland must be based on "truly egregious acts". *Batson v. Shiflett*, 325 Md. 684, 734, 602 A.2d 1191, 1216 (1992); *see also Young v. Hartford Accident & Indemnity*, 303 Md. 182, 492 A.2d 1270 (1985) (insurer committed a truly egregious act by subjecting plaintiff to a psychiatric examination for the sole purpose of harassing her into either abandoning her claim or committing suicide).

After evaluating the evidence in this record with respect to each individual Plaintiff, the Court concludes that the Plaintiffs have not pleaded sufficient facts to satisfy the second element of a sustainable IIED claim. Whether a defendant's conduct "was outrageous and extreme must be analyzed on a case-by-case basis." *Skidmore v. Precision Printing and Packaging, Inc.*, 188 F.3d 606, 613 (5th Cir. 1999). Nevertheless, courts routinely reject IIED claims on facts analogous to those alleged in this case. *See, e.g., Jackson v. Creditwatch, Inc.*, 84 S.W.3d 397 (Tex. App.- Ft. Worth 2002, pet. denied) (supervisor sexually harassed employee for two years, berated her in public, propositioned her, and exposed himself to her); *Brewerton v. Dalrymple*, 997 S.W.2d 212 (Tex. 1999) (university administrator made negative comments in the professor's file, unjustifiably denied the professor a promotion, restricted the professor's free speech, and assigned the professor an excessive course load); *Franco*, 971 S.W.2d at 52 (employer fired employees for reporting sexual

harassment).  The Plaintiffs have not pleaded sufficient facts to demonstrate that Naden's conduct

could be considered "beyond all possible bounds of decency, and to be regarded as atrocious, and

utterly intolerable in a civilized community." *Dean*, 885 F.2d at 306.

C.      *Assault*[3]

In Texas, an assault occurs when one "intentionally or knowingly threatens another with

imminent bodily injury. . . ."  Tex. Penal Code Ann. § 22.01(b) (Vernon 2003); *Forbes v. Lanzl*, 9

S.W.3d 895 (Tex. App. - Austin 2000, pet. denied) (the elements of assault are the same in civil and

criminal cases).  Maryland law is similar, requiring a plaintiff to prove that she was "threatened by

a defendant who possessed the apparent present ability to carry out that threat", and that the threat

"raised in the plaintiff's mind an apprehension of imminent bodily harm."  *Lee v. Pfeifer*, 916 F.

Supp. 501, 505-06 (D. Md. 1996).

Viewing all evidence in Plaintiffs' favor, the Court holds that Ms. Rose and Ms. Wujek have

provided the Court with sufficient evidence to overcome summary judgment on their assault claims.

Rose describes incidents in which Naden "french kissed" her without consent and attempted to grope

her.  Wujek reports an incident in which Naden grabbed her by the arm and forcibly removed her

from a business meeting.  The evidence is sufficient that Naden's conduct may have threatened Rose

and Wujek with imminent bodily injury.  Ms. Newman, on the other hand, merely describes being

present during an outburst in which Naden threw papers and slammed his chair into his desk.  She

states that she was terrified by the outburst, but she does not allege that these actions were taken in

such a way as to endanger her, and she offers no evidence that this incident caused her fear of

---

[3]Assault claims are asserted only by Plaintiffs Rose, Newman and Wujek.  The Complaint reveals that the assault claims are asserted exclusively against Naden.

imminent bodily harm.  The Court holds that Plaintiffs Rose and Wujek have met their summary

judgment burden with respect to their assault claims.  However, summary judgment is proper as to

Newman's assault claim.

CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' Motions for Summary

Judgment with respect to Plaintiffs' retaliation, and intentional infliction of emotional distress

claims.  The Court also GRANTS Defendants' Motion for Summary Judgment with respect to

Plaintiff Newman's assault claim.  The Court denies Defendants' Motions as to Plaintiffs' Title VII

hostile work environment claims, their hostile work environment claims under the Texas

Commission on Human Rights Act, and the assault claims asserted by Plaintiffs Rose and Wujek.

**SO ORDERED.**

**DATED:** August 17, 2005.

_____
Barbara M. G. Lynn
UNITED STATES DISTRICT JUDGE